UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

_____

UNITED STATES OF AMERICA,                    Court File No. 15-cr-190 (2)(4) (DSD/LIB)

          Plaintiff,

                                        **ORDER AND**
v.                                                            **REPORT AND RECOMMENDATION**

John James Svihel (2), and
Svihel Vegetable Farm, Inc. (4),

          Defendants.

_____

      This matter comes before the undersigned United States Magistrate Judge upon Defendant John James Svihel and Defendant Svihel Vegetable Farm, Inc.'s (collectively, the "Svihel Defendants") joint Motion for Severance or, in the Alternative, to Join Co-defendant's Motions. [Docket No. 103]. This case has been referred to the undersigned Magistrate Judge for a report and recommendation, in accordance with 28 U.S.C. § 636(b)(1) and Local Rule 72.1. The Court held a motions hearing on February 18, 2016, regarding the parties' pretrial motions.[1] The parties concurred that there was no need to submit supplemental briefing regarding the Svihel Defendants' joint Motion for Severance or, in the Alternative, to Join Co-defendant's Motions, [Docket No. 103], and the Court took the Svihel Defendants' joint motion under advisement on February 18, 2016.

      For reasons discussed herein, the Court recommends that the Svihel Defendants' joint Motion for Severance or, in the Alternative, to Join Co-defendant's Motions, [Docket No. 103], be **DENIED** without prejudice, to the extent the motion seeks severance of the case against the Svihel Defendants.

_____

[1]The Court addressed the parties' pretrial discovery motions by separate Order. [Docket No. 107].

The Court will also by Order **DENY** the motion to the extent that the Svihel Defendants seek alternative relief in the form of leave to join their co-defendants' motions.

## I.     BACKGROUND AND STATEMENT OF ALLEGED FACTS

In the Superseding Indictment, the Government alleges that, between 2010, and May 2015, Defendant Svihel Vegetable Farm, Inc. ("Defendant Farm") employed seasonal workers from the Dominican Republic that had entered the United States using H-2A temporary agricultural worker visas.  (Superseding Indictment, [Docket No. 37], at ¶ 9).  To obtain an H-2A visa, a foreign worker must be sponsored by a domestic employer who must submit an Application for Temporary Employment Certification, Form 9142, H-2A Application for Temporary Employment Certification ("Form 9142"). (Id. at ¶ 2). Once the United States Department of Labor issues the employer a certified Form 9142, the employer must then submit the original Form 9142, along with a Petition for a Nonimmigrant Worker, Form I-129 ("Form I-129"). (Id.). After the sponsoring employer's petition receives final approval, the foreign worker may apply for an H-2A visa. (Id. at ¶ 7).

An employer submitting a Form 9142 must attest as part of the application that the employer and its agent have not received payment of any kind from the potential employee for any activity relating to obtaining the labor certification; that the employer has and will contractually forbid any foreign labor recruiter used by the employer from seeking or receiving payments from prospective employees; that the employer will comply with applicable employment laws and regulations; and that the employer will pay all covered workers at least the highest of applicable wage rates. (Id. at ¶ 4).

An employer filing a Form I-129 must attest as part of the filing that: no H-2A employee paid the employer, any service, or agent any compensation as a condition of employment; and

that the employer agrees to the conditions of H-2A employment, which includes paying any covered worker's travel expenses from the worker's home country to the place of employment in the United States if the worker completes 50% of work contract period. (Id. at ¶¶ 5-6). A third party may prepare and submit Form 9142 and Form I-129 on behalf of a potential employee and sponsoring employer. (Id. at ¶ 3).

The Government alleges that, beginning in 2008, Defendant Sandra Lee Bart ("Defendant Bart") and Defendant Wilian Scorate Cabrera ("Defendant Cabrera") operated "Labor Listo" a business that recruited employers in the United States to hire H-2A workers from the Dominican Republic; recruited workers in the Dominican Republic to work on H-2A visas for recruited employers; and coordinated the hiring and employment of workers with employers. (Id. at ¶¶ 10-11). The Government further alleges that Defendant Bart and Defendant Cabrera recruited Defendant Svihel to employ Dominican Republic workers through the H-2A visa program to work for Defendant Farm, which Defendant Svihel owns and operates. (Id. at ¶¶ 9, 12; see also Id. at ¶ 30). Defendant Farm employed Dominican Republic workers through the H-2A visa program beginning with the growing season in 2010 through May 2015. (Id. at ¶ 9). For each of those years, Defendant Svihel, on behalf of Defendant Farm, signed multiple Forms 9142 and Forms I-129 that were submitted to obtain labor certification for the H-2A workers. (Id. at ¶ 13).

The Government alleges that, in May 2009, Defendant Cabrera required an H-2A visa worker that he had recruited to pay him a recruiting fee; that between 2010 and 2015, Defendant Cabrera required recruited H-2A visa workers to pay him a fee as a condition of being placed on a list of potential workers for Defendant Farm; that between 2010 and 2014, Defendant Cabrera required the H-2A visa workers to also pay a fee to Defendant Bart to secure their employment; that, in 2010, Defendant Bart, Defendant Carbrera, and Defendant Svihel required the workers to

pay for their own flights to and from the United States; that between 2011 and 2013, Defendant Svihel required the H-2A visa workers to pay him illegal cash kickback fees; that, between 2010 and 2014, Defendant Svihel did not pay H-2A workers overtime pay as required by applicable labor laws; and that, leading up to the 2015 growing season, Defendant Cabrera required the H-2A visa workers to leave collateral with an attorney in the Dominican Republic when they left for the United States. (Id. at ¶¶ 15, 17-21, 30).

The Government further alleges that Defendant Farm and Defendant Svihel attested as true on the submitted Forms 9142 and Forms I-129 statements that Defendant Svihel, Defendant Bart, and Defendant Cabrera knew were false, including: that the Svihel Defendants and their agents had not sought or received payments for any activity related to obtaining labor certification; that none of the H-2A workers had paid or agreed to pay the employer or their agents any form of compensation as a condition of employment; and that the Svihel Defendants would pay the H-2A workers the prevailing wage. (Id. at ¶ 29(a-b)). The Government also alleges that Defendant Svihel signed multiple Forms 9142 and Forms I-129 containing the false information above; that Defendant Svihel employed an agent to file the relevant immigration paperwork containing false statements with the Department of Labor and the Department of Homeland Security to obtain H-2A workers for Defendant Farm; and that the paperwork was submitted by mail via FedEx between 2010 and 2013, and by mail through the U.S. Postal service and internet submission between 2014 and 2015. (Id. at ¶¶ 30, 41, 44).

On the basis of those allegations, the Government charged Defendant Cabrera, Defendant Bart, and Defendant Svihel with conspiring "to recruit, to solicit, and hire persons for purposes of employment in the United States by means of materially false and fraudulent pretenses, representations and promises regarding that employment"; "to devise and intend a scheme to

defraud and to obtain money by means of materially false and fraudulent pretenses, representations, and promises, and by concealment of material facts, and for the purpose of executing the scheme, did knowingly cause immigration documents to be sent and delivered by the U.S. Postal Service and FedEx"; and to "cause immigration documents to be transmitted by means of interstate wire certain writing, signs, signals, pictures, and sounds[.]" (Id. at ¶¶ 33, 38(a-b)).

Finally, the Government alleges that Defendant Svihel and Defendant Farm willfully and knowingly caused to be made and used false writings or documents in a matter within the jurisdiction of a department or agency of the United States, knowing that the documents or writings contain materially false statements. (Id. at ¶ 46).

On May 26, 2015, Defendant Cabrera was indicted with one count of conspiracy to commit visa fraud and to obtain labor by means of threats of serious financial harm, in violation of 18 U.S.C. § 371. (Indictment, [Docket No. 4], ¶¶ 7-16).

On November 18, 2015, a Superseding Indictment was filed, charging Defendant Cabrera, Defendant Bart, and Defendant Svihel with one count of conspiracy to commit false swearing in an immigration matter, in violation of 18 U.S.C. § 371; one count of conspiracy to commit fraud in foreign labor contracting, in violation of 18 U.S.C. § 1349; and one count of conspiracy to commit wire and mail fraud, in violation of 18 U.S.C. § 1349. (Superseding Indictment, [Docket No. 37], ¶¶ 25-42).  The Superseding Indictment also charged Defendant Svihel and Defendant Farm with eight counts of false swearing in an immigration matter, in violation of 18 U.S.C. § 1546(a); and eight counts of false statements, in violation of 18 U.S.C. §§ 1001. (Superseding Indictment, [Docket No. 37], ¶¶ 43-46).

I.   **THE SVIHEL DEFENDANT'S MOTION FOR SEVERANCE OR, IN THE ALTERNATIVE, TO JOIN CO-DEFENDANTS' MOTIONS, [Docket No. 103]**

The Svihel Defendants move the Court for an Order, pursuant to Federal Rules of Criminal Procedure 8 and 14, severing the case against them from the case against Defendant Cabrera and Defendant Bart. (Defs.' joint Motion for Severance or, in the Alternative, to Join in Co-defendant's motions, [Docket No. 103]). In the event that the Court denies the motion for severance, the Svihel Defendants move, in the alternative, for permission to join all of the pre-trial motions of their co-defendants. (Id.).

**A.  Severance**

1.  Standard of Review

An indictment may charge two or more defendants "if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." Fed. R. Crim. P. 8(b). It is, however, not necessary for proper joinder "that every defendant have participated in or be charged with each offense." United States v. Warfield, 97 F.3d 1014, 1019 (8th Cir. 1996) (internal quotation and citation omitted). "There is a preference in the federal system for joint trials of defendants who are indicted together." Zafiro v. United States, 506 U.S. 534, 537 (1993); see also United States v. Clay, 579 F.3d 919, 927 (8th Cir. 2009). "Joint trials play a vital role in the criminal justice system," because they achieve certain efficiencies, and because they "avoid[] the scandal and inequity of inconsistent verdicts." Richardson v. Marsh, 481 U.S. 200, 209–10 (1987). Accordingly, "rarely, if ever, will it be improper for co-conspirators to be tried together." Warfield, 97 F.3d at 1019 (citing United States v. Jackson, 64 F.3d 1213, 1217 (8th Cir. 1995)).

Nevertheless, the Federal Rules of Criminal Procedure provide that if joinder creates prejudice to either the Government or a defendant, the Court may sever a trial "or provide any

6

other relief that justice requires." Fed. R. Crim. P. 14(a). However, "[i]f, under Rule 8, joinder is proper, then the defendant seeking severance has a 'heavy burden' in demonstrating that a joint trial will impermissibly infringe his right to a fair trial." United States v. Hopkins, No. 11–230 (DWF/SER), 2011 U.S. Dist. LEXIS 127071, at *25–26 (D. Minn. Oct. 5, 2011) (citing Warfield, 97 F.3d at 1019). "Only in an unusual case will the prejudice resulting from a joint trial be substantial enough to outweigh the general efficiency of joinder." Clay, 579 F.3d at 927 (citing United States v. Al–Esawi, 560 F.3d 888, 891 (8th Cir. 2009)).

   2. **Analysis**

   In support of their motion, the Svihel Defendants offer mere generalized arguments, asserting in a conclusory fashion that the majority of the evidence in the present case does not involve either of them; that there are conflicts of interest between the co-defendants that will prejudice the Svihel Defendants at trial; and that, because the Government's allegations relate to a complex conspiracy, there is a significant risk that a joint trial would compromise the Svihel Defendants' trial rights and prevent the jury from making reliable determinations of guilt or innocence. (See Def.'s Motion for Severance or, in the Alternative, to Join Co-defendant's Motions, [Docket No. 103]). The Svihel Defendants, however, articulate no specific facts demonstrating either (1) that joinder of the defendants was improper under Rule 8(b), or (2) that continued joinder will create prejudice sufficient to warrant severance pursuant to Rule 14.

   The Svihel Defendants' largely boilerplate arguments, as submitted on the present record, do not suffice to carry their heavy burden to demonstrate that severance is warranted in the present case. The Court could summarily recommend denying Defendant's motion on this basis alone.  However, in an abundance of caution, the Court also notes that the factual allegations in

the Superseding Indictment indicate that joinder was indeed proper under Rule 8(b) and that severance pursuant to Rule 14 is not warranted on the present record.

The factual allegations in the Superseding Indictment indicate that Defendant Svihel participated in the same series of acts or transactions constituting the offenses charged against Defendant Svihel, Defendant Farm, Defendant Bart, and Defendant Cabrera. See Fed. R. Civ. P. 8(b). Specifically, the factual allegations indicate that Defendant Svihel, along with Defendant Cabrera and Defendant Bart, conspired together to recruit and hire foreign nationals to work in the H-2A temporary agricultural visa program, by means of materially fraudulent misrepresentations, had received prohibited payments from the foreign nationals as a condition of allowing them to work at Defendant Farm, and that Defendant Svihel on behalf of Defendants Farm submitted H-2A visa application documents by mail and over the internet which falsely represented that none of the Defendants had received payments from the H-2a visa workers or conditioned work on Defendant Farm on the payment of fees to the Defendants. (Superseding Indictment, [Docket No. 37], at ¶¶ 26, 29-30, 33, 36, 38, 41). Accordingly, as the Defendants are alleged to have participated in the same series of acts or transactions constituting the charged offenses under Rule 8(b), joinder of the Defendants was proper. See United States v. Jarrett, 684 F.3d 800, 804 (8th Cir. 2012) ("Ordinarily, indicted coconspirators should be tried together, especially where the proof of conspiracy overlaps."); see also Warfield, 97 F.3d at 1019 (noting that it is not necessary for the purpose of joinder that every defendant have been alleged to have participated in or be charged with every offense).

Because joinder of the Defendants was proper under Rule 8(b), the Svihel Defendants necessarily bear the heavy burden of demonstrating that a joint trial will impermissibly infringe on their rights to a fair trial. "Where two or more defendants have been charged in the same

indictment, there is a preference for a joint trial unless the benefits are outweighed by a clear likelihood of prejudice." United States v. Hively, 437 F.3d 752, 765 (8th Cir. 2006) (citing Zafiro, 506 U.S. at 537).

Nothing in the record presently before the Court indicates that the Svihel Defendants stand to incur any specific prejudice that is attributable to the joinder of the Defendants for trial that would be sufficient to warrant severing the Svihel Defendants' case. Nor do the Svihel Defendants' boilerplate arguments identify any specific prejudice that they would incur as a result of the joinder of the Defendants and, as a result, those arguments are similarly insufficient carry the Svihel Defendants' burden to show that severance is warranted here.

The Court also notes that the Svihel Defendants do not even argue that any specific evidence will be admitted against their co-defendants that will prejudice the Svihel Defendants and do not offer any argument that such prejudice can only be cured by severance pursuant to Bruton v. United States, 391 U.S. 123 (1968).

In Bruton, the petitioner and a co-defendant had been convicted of armed robbery in a joint trial after a postal inspector testified that Bruton's codefendant had confessed and had "expressly implicat[ed]" the petitioner. Bruton, 391 U.S. at 124 n. 1. The trial court instructed the jury that the co-defendant's confession "if used, can only be used against the [co-defendant]. It is hearsay insofar as the [petitioner] is concerned, and you are not to consider it in any respect to the [petitioner], because insofar as he is concerned it is hearsay." Id. at 125 n. 2. The Supreme Court, however, concluded that:

> [T]he introduction of [the co-defendant's] confession posed a substantial threat to the petitioner's right to confront the witnesses against him, and this is a hazard we cannot ignore. Despite the concededly clear instructions to the jury to disregard [the co-defendant's] inadmissible hearsay evidence inculpating petitioner, in the context of a joint trial we cannot accept limiting instructions as an adequate

> substitute for petitioner's constitutional right of cross-examination. The effect is the same as if there had been no instruction at all.

Id. at 137. For that reason, the Supreme Court reversed the petitioner's conviction in Bruton. Id. at 126, 137.

However, even the Bruton court suggested that redacting a co-conspirator's testimony may be sufficient to cure any prejudice caused by the introduction of a co-defendant's incrimination statement, and acknowledged that "[n]ot every admission of inadmissible hearsay or other evidence can be considered to be reversible error unavoidable through limiting instructions." Id. at 134 n. 10, 135. In Richardson, 481 U.S. 200, the Supreme Court further distinguished between co-defendant statements that are "facially incriminating," and statements which merely are "incriminating by connection." Id. at 209. When a co-defendant's statement is facially incriminating of the defendant, redaction or even severance may be required because it is more difficult for jurors to set aside such evidence. Id. at 208. However, the Court rejected as both impractical and unnecessary the suggestion that the rule in Bruton extend to confessions that are incriminating by connection. Id. at 208–09.

As noted above, the Svihel Defendants have not supported their motion for severance by identifying any specific incriminating evidence, much less any specific co-defendant statements, that they believe would prejudice them if introduced at trial.  Moreover, the Svihel Defendants have not articulated any specific reason why the jury would be unable to compartmentalize any redacted statements or evidence upon being provided a proper instruction by the trial judge to do so. (See, gen., Defs.' Motion for Severance or, in the Alternative, to Join Co-defendants' Motions, [Docket No. 103]).

Further, the Court notes that the practical efficiencies to be gained by a joint trial are significant in this case. In its Response, the Government represented, and the Svihel Defendants

did not dispute, that the facts supporting the acts alleged to have been taken by Defendant Svihel on behalf of Defendant Farm in counts four through nineteen are intertwined with the overt actions that are alleged to have been taken as part of the conspiracy charged in counts one through three. (Gov't.'s Response, [Docket No. 105], 14, 17).  In addition, at the motions hearing, counsel for the Government represented, and the Svihel Defendants did not dispute, that many of the witnesses who will testify at the trial will be traveling from outside the United States. (February 18, 2016, Motions Hearing, Digital Recording at 10:29:55 a.m.-10:30:35 a.m.). In such circumstances, the balance of the efficiencies weighs in favor of a single joint trial rather than requiring the witnesses to travel to the United States on multiple occasions for separate trials.

As articulated above, there is a strong preference in the federal system for joint trials. In light of that preference, and at this early juncture, where the Svihel Defendants can only invite the court to speculate as to what evidence the Government might actually seek to introduce at a joint trial, severance is not appropriate. "Severance is a remedy that can be provided at the time of trial if appropriate under the circumstances." United State v. Billups, No. 06-cr-129 (PJS/AJB), 442 F. Supp. 2d 697, 706 (D. Minn. 2006); see also "United States v. Mickelson, 378 F.3d 810, 818 (8th Cir. 2004) ("The risk of prejudice posed by joint trials is best cured by careful and thorough jury instructions.") (citation omitted).

For all the reasons articulated above, to the extent that the Svihel Defendants seek an Order severing the case against them from the case against their co-defendants, the undersigned recommends **DENYING** Defendant's Motion for Severance, [Docket No. 103], without prejudice.

**B. Join Co-Defendants' Motions**

Because the undersigned recommends denying the Svihel Defendants' motion to the extent that the Svihel Defendants seek severance of the case against them, the Court must now consider the Svihel Defendants' motion in the alternative to join in the pre-trial motions of their co-defendants. The Svihel Defendants do not, in their moving papers, identify any specific motion made by their co-defendants that they seek to join. Accordingly, the Court construes the Svihel Defendants' request as seeking to join in <u>all</u> of the motions of their co-defendants.

Other courts faced with motions for blanket authorization to join in <u>all</u> motions of all co-defendants have denied such motions as fatally vague in the absence of the movant's statement identifying each specific co-defendant motion he wished to join, as well as, his basis for standing and the specific factual and legal basis for joining in each motion. <u>See, e.g.</u>, <u>United States v. Harvey</u>, No. 02:12-CR-113, 2014 WL 657595, at *3 (W.D. Pa. Feb. 20, 2014) (requiring a defendant moving to join in co-defendant's motion to file a separate statement of joinder establishing standing and the factual and legal basis for a joint application, even where the motion was unopposed); <u>see also, e.g.</u>, <u>United States v. Johnson</u>, No. 08 CR 466, 2008 WL 5111166, at *3 (N.D. Ill. Dec. 3, 2008) (concluding that motion to join in all motion of co-defendants was fatally vague). The undersigned finds persuasive the practice of those courts that have required a defendant seeking to join in co-defendants' motions: 1) to specifically identify in his motion papers each co-defendant motion he is seeking to join; 2) to allege a basis for standing in each motion; and 3) to allege his legal and factual basis for joining in each motion. Here, the Svihel Defendants have not identified their basis for standing in any pre-trial motions filed by their co-defendants, nor have they offered any factual or legal basis for joining in any specific motion filed by their co-defendants.

Based on the foregoing, to the extent that the Svihel Defendants' seek leave to join in the pre-trial motions of their co-defendants, the motion is denied.[2]

## II.    CONCLUSION

**A.** Based on the foregoing and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that the Svihel Defendants' joint Motion for Severance or, in the Alternative, to Join Co-defendants' Motions, [Docket No. 103], is **DENIED** to the extent that the Svihel Defendants seek leave to join in the pre-trial motions of their co-defendants.

**B.**  Based on the foregoing and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED**: that the Svihel Defendants' joint Motion for Severance or, in the Alternative, to Join Co-defendants' Motions, [Docket No. 103], be **DENIED** without prejudice, as set forth above, to the extent that the Svihel Defendants' seek severance of the case against them from the case against their co-defendants.

Dated: February 25, 2016.                                           s/Leo I. Brisbois
                                                                    Leo I. Brisbois
                                                                    U.S. MAGISTRATE JUDGE

## N O T I C E

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "A party may file and serve specific written objections to a magistrate judge's proposed findings and recommendation within 14 days after being served with a copy of the recommended disposition[.]"  A party may respond to those objections within 14 days after being served a copy of the objections.  LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).

---

[2] The Court also notes that the Svihel Defendants made their own pretrial motions for the discovery and production of evidence that were in virtually all respects similar to the discovery motions made by the co-defendants. Accordingly, the Svihel Defendants will not be denied any meaningful discovery in this case.

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing.  If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.